IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAUDIA ACOSTA,<br><br>                Plaintiff,<br><br>        v.<br><br>COHERENT, INC., GARRY ROGERSON, ANDY MATTES, JAY T. FLATLEY, PAMELA FLETCHER, BEVERLY KAY MATTHEWS, MICHAEL MCMULLEN, STEVE SKAGGS, and SANDEEP VIJ,<br><br>                Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Claudia Acosta ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Coherent, Inc. ("Coherent" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Coherent and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Coherent and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Watson Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of II-VI, ("Parent" and together with Merger Sub "II-VI") whereby Coherent will survive as a wholly owned subsidiary of II-VI (the "Proposed Transaction").

2. On March 25, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with II-VI. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $220 in cash and 0.91 of a share of II-VI common stock for each share of Coherent Common stock owned (the "Merger Consideration").

3. On May 4, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4/A (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Coherent and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Coherent shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Coherent shares.

9. Defendant Coherent is incorporated under the laws of Delaware and has its principal executive offices located at 5100 Patrick Henry Drive, Santa Clara, CA, 95054. The Company's common stock trades on the NASDAQ under the symbol "COHR."

10. Defendant Garry Rogerson ("Rogerson") is and has been Chairman of the Board of Directors of Coherent at all times during the relevant time period.

11. Defendant Andy Mattes ("Mattes") is and has been the President and Chief Executive Officer ("CEO") and a director of Coherent at all times during the relevant time period.

12. Defendant Jay T. Flatley ("Flatley") is and has been a director of Coherent at all times during the relevant time period.

13. Defendant Pamela Fletcher ("Fletcher") is and has been a director of Coherent at all times during the relevant time period.

14. Defendant Beverly Kay Matthews ("Matthews") is and has been a director of Coherent at all times during the relevant time period.

15. Defendant Michael McMullen ("McMullen") is and has been a director of Coherent at all times during the relevant time period.

16. Defendant Steve Skaggs ("Skaggs") is and has been a director of Coherent at all times during the relevant time period.

17. Defendant Sandeep Vij ("Vij") is and has been a director of Coherent at all times during the relevant time period.

18. Defendants Rogerson, Mattes, Flatley, Fletcher, Matthews, McMullen, Skaggs, and Vij are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants, along with Defendant Coherent, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20. Coherent is a global provider of lasers and laser-based technology for scientific, commercial and industrial customers. The Company designs, manufactures, markets and services lasers, laser tools, precision optics, and related accessories. The Company's products are used for applications in microelectronics, materials processing, original equipment manufacturer components and instrumentation, and scientific research and government programs.

**The Company Announces the Proposed Transaction**

21. On March 25, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

SANTA CLARA, Calif., March 25, 2021 /PRNewswire/ -- Coherent, Inc. (NASDAQ: COHR) today announced that its board of directors has determined, after consultation with its financial and legal advisors, that the previously disclosed acquisition proposal Coherent received from II-VI Incorporated (NASDAQ: IIVI) on March 17, 2021 continues to be a "Company Superior Proposal" under Coherent's March 9, 2021 merger agreement with Lumentum Holdings Inc. (NASDAQ: LITE) after giving due consideration to the revised acquisition proposal Coherent received from Lumentum on March 22, 2021. In making its determination, the Coherent board of directors evaluated the comparative benefits and risks of the II-VI and Lumentum proposals, including the near-term and long-term financial opportunities and risks presented by each proposal, the potential synergies available through a combination with each company, and the complementary businesses of each company.

Accordingly, Coherent is terminating the March 9, 2021 merger agreement between Coherent and Lumentum and paying Lumentum the $217.6 million termination fee contemplated by their merger agreement in order to enter into a new merger agreement with II-VI.

Under the terms of Coherent's merger agreement with II-VI, each share of Coherent common stock will be exchanged for $220.00 in cash and 0.91 of a share of II-VI common stock at the completion of the transaction. The transaction with II-VI is subject to approval by the stockholders of Coherent and II-VI, receipt of U.S. and foreign regulatory approvals and other customary closing conditions. The transaction is expected to close in the fourth quarter of 2021.

Bank of America and Credit Suisse are serving as financial advisors to Coherent, and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT**

22. On May 4, 2021, the Company authorized the joint filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

24. The Registration Statement contains projections prepared by the Company's and II-VI's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

26.     In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27.     Specifically, with respect to the Coherent projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Non-GAAP Earnings Per Share; and (iii) Unlevered Free Cash Flow.

28.     Specifically, with respect to the II-VI projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Non-GAAP Earnings Per Share; (iii) Unlevered Free Cash Flow; and (iv) Net Operating Profit.

29.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Opinions

30.     The Registration Statement contains the financial analyses and opinion of BofA Securities, Inc. ("BofA") and Credit Suisse Securities (USA) LLC ("Credit Suisse" and together with BofA, the "Financial Advisors") concerning the Proposed Transaction, but fails to provide material information concerning such.

31. With respect to BofA's *Selected Precedent Transactions Analysis* for the Company, the Registration Statement fails to disclose the closing dates and value for each of the transactions observed by BofA in its analysis.

32. With respect to BofA's *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the Company's terminal values; (ii) line items used by BofA to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying BofA's use of the perpetuity growth rates ranging from 3.0% to 4.0%; and (iv) the inputs and assumptions underlying BofA's use of the discount rates ranging from 8.5% to 11.5%.

33. With respect to BofA's *Discounted Cash Flow Analysis* for II-VI, the Registration Statement fails to disclose: (i) II-VI's terminal values; (ii) the line items used by BofA to calculate II-VI's projected unlevered free cash flows; (iii) the inputs and assumptions underlying BofA's use of the perpetuity growth rates ranging from 2.5% to 3.5%; and (iv) the inputs and assumptions underlying BofA's use of the discount rates ranging from 7.0% to 9.0%.

34. With respect to BofA's *Pro Forma Analysis*, the Registration Statement fails to disclose: (i) the implied equity value of net estimated cost savings to the combined company; (ii) the inputs and assumptions underlying BofA's use of the perpetuity growth rates ranging from 3.0% to 4.0%; (iii) the inputs and assumptions underlying BofA's use of the discount rates ranging from 8.5% to 11.5%; (iv) the decrease in cash from the merger to the combined company.

35. With respect to Credit Suisse's *Selected Transactions Analysis Regarding Coherent*, the Registration Statement fails to disclose the closing dates and values for each of the transactions observed by Credit Suisse in its analysis.

36. With respect to Credit Suisse's *Discounted Cash Flow Analysis Regarding Coherent*, the Registration Statement fails to disclose: (i) the inputs and assumptions for Credit Suisse's use of the range of terminal value multiples of 10.0x to 12.0x; and (ii) the inputs and assumptions underlying Credit Suisse's use of the discount rates ranging from 8.5% to 10.5%.

37. With respect to Credit Suisse's *Discounted Cash Flow Analysis Regarding II-VI*, the Registration Statement fails to disclose: (i) the inputs and assumptions used by Credit Suisse for applying a range of terminal value multiples of 9.5x to 11.5x; and (ii) the inputs and assumptions underlying Credit Suisse's use of the discount rates ranging from 8.0% to 10.0%.

38. With respect to Credit Suisse's *Pro Forma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions used by Credit Suisse for applying a range of terminal value multiples of 10.0x to 12.0x; (ii) the inputs and assumptions underlying Credit Suisse's use of the discount rates ranging from 8.5% to 10.5%; and (iii) the incremental debt expected to result from the Proposed Transaction.

39. Lastly, the Registration Statement notes that "Credit Suisse is entitled to receive from Coherent a transaction fee of $17.0 million, $2.0 million of which became payable upon the rendering of Credit Suisse's opinion on March 9, 2021, $2.0 million of which became payable upon the rendering of Credit Suisse's opinion on March 24, 2021, $10.0 million of which is payable contingent upon the closing of the merger and, at Coherent's sole discretion, $3.0 million of which may be paid at the closing of the merger." However, the Registration Statement fails to disclose whether Coherent intends to pay such $3.0 million fee.

40. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover,

the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

41. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

44. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any

material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

46. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

47. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

48. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was

disseminated, to corroborate that there are no material misstatements or omissions.

49. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

50. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Coherent within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Coherent, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

56. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 7, 2021                                                     Respectfully submitted,

                                                                       By: */s/ Joshua M. Lifshitz*
                                                                       Joshua M. Lifshitz

Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*